UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA R. RICE,

                                   Case No. No. 20-10500

               Plaintiff,                    District Judge David M. Lawson

v.                                       Magistrate Judge R. Steven Whalen

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.

_____/

### REPORT AND RECOMMENDATION

       Plaintiff Angela R. Rice brings this action under 42 U.S.C. §405(g), challenging

Defendant Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of

the Social Security Act. The parties have filed cross-motions for summary judgment which

have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

For the reasons set forth below, I recommend that Defendant's Motion for Summary

Judgment [ECF No. 15] be GRANTED and that Plaintiff's Motion for Summary Judgment

[ECF No. 11] be DENIED.

## I.  PROCEDURAL HISTORY

On September 28, 2017, Plaintiff filed an application for DIB, alleging disability as of November 10, 2013[1] ECF No. 9-5, PageID.184 (Tr. 148).[2]  Upon the initial denial of the claim, she requested an administrative hearing, held on August 31, 2018 in Detroit, Michigan (Tr. 32).  Administrative Law Judge ("ALJ") Crystal L. White-Simmons presided.  Plaintiff, represented by attorney Kerry Spencer, testified (Tr. 35-53), as did Vocational Expert ("VE") Diane Regan (Tr.  53-55).  On December 19, 2018, ALJ White-Simmons determined that Plaintiff was not disabled at any time between the application date and the September 30, 2018 expiration of benefits (Tr. 15-27).

On January 3, 2020, the Appeals Council declined to review the ALJ's decision (Tr. 1-3).  Plaintiff filed her complaint in this Court on February 27, 2020.

## II.  BACKGROUND FACTS

Plaintiff, born March 20, 1971, was 47 at the time of the ALJ's decision  (Tr. 27, 148). She completed two years of college and received a certification as a medical surgical technologist (Tr. 175).  She alleges disability as a result of complications from a double mastectomy, anxiety, a hysterectomy, arthritis, back pain, paranoia, and migraine headaches (Tr. 174).

---

[1]Plaintiff later amended the alleged onset of disability date to August 30, 2017 (Tr. 15).

[2]References to the administrative transcript (ECF No. 9) are henceforth cited by transcript page number (Tr. xx).

### A. **Plaintiff's Testimony**

Plaintiff offered the following testimony.

She lived in Allen Park, Michigan in a single-family home with her husband and two children, ages 19 and 7 (Tr. 35-36). She held a valid driver's license but chose not to drive since undergoing surgery (Tr. 37). She relied on her husband and daughter for transportation (Tr. 37).

Before ceasing work, Plaintiff worked as a contingent nurse's aid (Tr. 38). She was fired after taking time off work (Tr. 38). Her former work required her to lift patients weighing up to 200 pounds (Tr. 40). Plaintiff opined that she was unable to work due to hand and arm weakness; the inability to reach overhead; upper back numbness; and difficulties recovering from surgery including cellulitis (Tr. 41). Her double mastectomy was performed due to a family history of breast cancer rather than an actual diagnosis of breast cancer (Tr. 41-42). She experienced infections for a total of nine months after followup surgery (Tr. 42). She underwent a partial hysterectomy in 2013 and was scheduled for the upcoming removal of the ovaries (Tr. 43).

Plaintiff experienced varying degrees of pain and fatigue (Tr. 44). She was unable to lift even one gallon of milk (Tr. 44). She was able to stand for up to 30 minutes, adding that she had to shift positions due to sciatic nerve pain and numbing (Tr. 45). She could sometimes sit "for hours," but at other times needed to change position after 25 minutes (Tr. 45). She could walk for up to four-and-a-half blocks (Tr. 45). She experienced bilateral hand

numbness which caused gripping limitations (Tr. 45).  The gripping difficulties were sporadic rather than chronic (Tr. 46).  She tried not to bend, kneel, squat, or crawl due to the fear of overextending herself (Tr. 46).  She had been advised by a treating source not to climb or perform heavy lifting (Tr. 47).  She was able to perform self-care tasks but required help putting on tennis shoes (Tr. 47-48).  Her household chores were limited to dusting, wiping the kitchen counters, and light meal preparation (Tr. 48).  She spent her waking hours watching Netflix or pacing (Tr. 48).

In response to questioning by her attorney, Plaintiff reported low energy (Tr. 49).  She was scheduled for breast reconstruction surgery (Tr. 50).  She experienced kidney stones and had urinary tract infections ("UTIs") every two months (Tr. 51).  She stated that she was unable to work due to the combination of medication side effects causing fatigue and soreness (Tr. 52-53).

### B.  Medical Records

### 1. The Treating Records

June, 2015 records by Salil Dua, M.D. note a herniated lumbar disc (Tr. 398).  In August and October, 2015 records note that Plaintiff took ibuprofen, Norco, Tylenol for back pain, and was "undecided about surgery" (Tr. 396-397).  In February and April, 2016, Plaintiff denied physical and psychological symptoms (Tr. 365, 377).  In April, 2016, she reported that she had not followed up on suggestions for physical therapy (Tr. 365). In August, 2016, Plaintiff reported that back pain was still "bothersome" (Tr. 333).  The

following month, she denied exercise intolerance (Tr. 328). February and April, 2017 records note that Plaintiff was attempting to lose weight through diet and exercise (Tr. 302). In April, 2017, Plaintiff denied depression and anxiety (Tr. 518). The following month, surgeon John D. Parmely, D.O. noted Plaintiff's denial of either depression or anxiety (Tr. 867).

In August, 2017, Plaintiff underwent a prophylactic bilateral mastectomy due to a family history of breast cancer with preparations for reconstructive surgery (Tr. 209-247, 228-231). She was discharged two days later (Tr. 620). The following month, she developed cellulitis of the left breast (Tr. 214, 686). November, 2017 records state that a right breast rash and left breast problems had resolved (Tr. 463). In January, 2018, Plaintiff underwent "stage II" of breast reconstruction surgery (Tr. 475, 714). Dr. Dua recommended physical therapy for neck pain (Tr. 568). February, 2018 plastic surgery records note "no complaints or issues" (Tr. 460). In May, 2018, Plaintiff reported difficulty with left-sided grasping and knee weakness (Tr. 531). She endorsed the symptoms of left hand numbness and tenderness (Tr. 531). In June, 2018, Plaintiff underwent a grafting procedure (Tr. 588, 793, 829).

The same month, Dr. Dua completed an assessment of Plaintiff's work-related activities, noting the conditions of back, wrist, and chest pain as well as fatigue (Tr. 856). He found that Plaintiff was capable of walking/standing two hours in an eight-hour workday and sitting for four (Tr. 857). He found that Plaintiff required a three-minute rest period every half hour and an unscheduled break every two hours (Tr. 857). He limited her to one hour grasping and 30 minutes fingering on the left and two hours reaching bilaterally (Tr. 857).

He found that Plaintiff could never twist, stoop, crouch, or climb; rarely turn/look up; and occasionally look down or hold head in one position (Tr. 858). He noted long-term "fatigue and attention problems" (Tr. 858). The same month, Dr. Dua completed a medical questionnaire, finding that Plaintiff's symptoms included pain, fatigue, and impaired concentration (Tr. 860). He gave her a "poor" prognosis (Tr. 861).

### 2. The Non-Treating Records

In January, 2018, Bina Shaw, M.D. performed a consultative examination on behalf of the SSA, noting Plaintiff's report of a prophylactic double mastectomy in July, 2017 (Tr. 438). A related breast implant procedure resulted in multiple infections of the left breast (Tr. 438). She noted that she was scheduled for ovary removal in April, 2018 (Tr. 438). She reported anxiety and depression due to the breast and ovarian problems (Tr. 438). Plaintiff reported a history of left-sided chest wall pain and thoracic spine pain due to muscle spasms (Tr. 439). Plaintiff exhibited full muscle strength, a normal gait, and had a normal neurological examination (Tr. 440). Dr. Shaw found that Plaintiff was independent in activities of daily living and could "sit, stand, walk, bend, and push and pull" at least 20 pounds for eight hours a day (Tr. 440).

Plaintiff underwent a consultative psychological evaluation the same day (Tr. 449). The examiner noted that Plaintiff drove herself to the appointment (Tr. 449). Plaintiff reported going "back and forth" with the decision to go into therapy, and reported symptoms of anxiety (Tr. 450). She reported that the inability to be up on her feet all day,

combined with anxiety prevented even part-time work (Tr. 450-451).  Plaintiff reported

that her older child did not live at home and that she cared for her younger child (Tr. 450).

She reported that she had changed her hair color six times in the last month (Tr. 452).  She

reported that she was able to perform household chores and prepare simple meals, run

errands, shop, schedule appointments, exercise, and use a cell phone (Tr. 452).  She did

not appear to exhibit symptoms of Attention Deficit Hyperactivity Disorder ("ADD") (Tr.

452).  She exhibited a normal thought process and was cooperative, and denied

hallucination or suicidal ideation (Tr. 452-453).  The examiner found that Plaintiff was

able to handle benefit funds but found that due to anxiety, a mood disorder, obsessive

compulsive personality disorder, and a psychotic disorder ("due to another medical

condition with delusions") he recommended mental health treatment and the use of

prescribed psychotropic medications (Tr. 454).  The examiner concluded that Plaintiff

experienced moderate impairment in relating to others; understanding, remembering, and

carrying out tasks; and "moderate to marked" limitation in concentration, persistence,

pace, and effort (Tr. 454).

Later the same month, January, 2018, Leonard C. Balunas, Ph.D. performed a non-

examining review of the treating and consultative records related to Plaintiff's

psychological conditions, finding moderate limitation in understanding, remembering, or

applying information; concentration, persistence, or pace, and adaptation with mild

limitation in interacting with others (Tr. 63). Thomas Chiambretti, D.O. performed a non-

examining assessment of the records related to Plaintiff's physical conditions, finding that she could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for about six hours in an eight-hour workday; and push and pull without limitation (Tr. 65).  Dr. Chiambretti found the absence of additional limitations (Tr. 65).

### C.  Vocational Testimony

The VE classified Plaintiff's past work as a nurse's aide as exertionally medium (very heavy as performed) and semiskilled[3] (Tr. 53).  The ALJ then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, educational level, and work history:

> [T]he individual is limited to a light exertional level. Let's start first with limited to simple and routine tasks with only occasional changes in the work setting, with the light exertional level. Could that individual do the claimant's past work? (Tr. 53-54).

The VE testified that the above limitations precluded Plaintiff's past relevant work but allowed for the exertionally light, unskilled work of an assembler (200,000 positions in the national economy); packer (200,000); and sorter (100,000) (Tr. 54).  She

---

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

testified that the additional restrictions of a preclusion on ladder, rope, or scaffold use; occasional use of ramps and stairs; and occasional balancing, stooping, kneeling, crouching, crawling, and overhead reaching (bilateral), simple and routine task[s] with only occasional changes in the work setting would not change the job listings or numbers (Tr. 54). She testified that an additional limitation to frequent handling and fingering would not change her job findings (Tr. 54). She testified that if the original hypothetical restrictions were applied to sedentary rather than light work, the individual could work as an inspector (Tr. 50,000); sorter (50,000); and assembler (100,000) (Tr. 55). She stated that the need to be off task 20 percent of the workday or be absent two or more days of the month would preclude all competitive employment (Tr. 55). She stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") and her own professional experience (Tr. 55).

### D.   The ALJ's Determination

Citing the medical transcript, ALJ White-Simmons found that Plaintiff experienced the severe impairments of "degenerative disc disease of the cervical and lumbar spine; status post double mastectomy and surgical breast reconstruction procedures due to a family history of breast carcinoma; anxiety disorder; mood disorder; psychotic disorder; and obsessive-compulsive personality disorder" but

that none of the conditions met or equaled a listed impairment found in 20 C.F.R.

Part 404, Subpart P, Appendix 1 (Tr. 17-18).  She found that the following

conditions, while supported by diagnoses, did not cause more than minimal work-

related limitation:

> [H]ypertension, diabetes mellitus, a history of  hysterectomy, ovarian cysts, migraine headaches, hemorrhoids,  chondromalacia of the left patella, urinary incontinence, hyperlipidemia, hypothyroidism, anemia, contact dermatitis, allergic  rhinitis, acute maxillary sinusitis, urinary tract infections, fatigue, chest pain, obesity, and  radial styloid tenosynovitis  of left wrist moderate limitation in remembering or applying information; interacting with others; concentration, persistence, or pace; and adaptation (Tr. 18).

She found that Plaintiff experienced moderate limitation in understanding,

remembering, or applying information; concentration, persistence, or pace; and

adaptation (Tr. 19-20).  She found mild limitation in interacting with others (Tr.

20).   ALJ White-Simmons determined that Plaintiff had the Residual Functional

Capacity ("RFC") for exertionally sedentary work with the following additional

restrictions:

> [She] can never climb ladders, ropes and scaffolds; can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; can occasionally reach overhead; can frequently handle or finger bilaterally; is limited to simple and routine tasks involving only occasional changes in the work-setting (Tr. 20).

Citing the VE's testimony (Tr. 55), the ALJ determined that Plaintiff could work at

the sedentary jobs of inspector, sorter, and assembler (Tr. 26).

-10-

The ALJ rejected Plaintiff's professed degree of physical and mental limitation (Tr. 21-22). She noted that the absence of neurological or gait-related deficits (Tr. 22). She cited Dr. Shaw's consultative observation that Plaintiff exhibited a full range of motion in all joints, a normal gait, full muscle strength, and no neurological deficits (Tr. 22). As to the allegations of psychological impairment, the ALJ noted that Plaintiff's treatment was exclusively conservative and that she (1) did not seek specialized care (2) reported good results from Xanax and, (3) did not report "regular, ongoing . . . poorly controlled psychological symptoms to her primary care providers (Tr. 23). The ALJ cited the January, 2018 consultative findings of impaired concentration but noted that Plaintiff was "pleasant[] and friendly with appropriate hygiene and eye contact and the ability to perform basic calculations without significant difficulty (Tr. 23).

### III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted). The district court reviews the final decision of the Commissioner to determine whether it is supported

by substantial evidence. *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*). Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)). However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

-12-

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391–92 (6th Cir. 1999).

## V.  ANALYSIS

### A.  The Residual Functional Capacity

Plaintiff argues first that the Residual Functional Capacity Assessment ("RFC") does not account for her full degree of psychological limitation. *Plaintiff's Brief,* ECF

No.11, PageID.883. She contends that her diagnoses of a mood disorder, an obsessive-compulsive personality disorder ("OCD"), and a psychotic disorder were not reflected in the ALJ's finding of only "mild" limitation in interacting with others.  *Id.* at 993-994 (*citing* Tr. 17-19-20).  Plaintiff argues in particular that OCD, by its nature, would create workplace problems in pacing and the ability to finish projects in a timely fashion.  *Id.* She contends that the RFC composed by the ALJ was not supported by the record or adequately explained.  *Id.* at 995.

An RFC describes an individual's residual abilities. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). The "RFC is to be an 'assessment of [a claimant's] remaining capacity for work' once [his] limitations have been taken into account" *Id.* (*quoting* 20 C.F.R. § 416.945).[4]   In determining a claimant's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. §§ 404.1545(a)(1); 416.945 (RFC must be based on all "relevant evidence"). The ALJ must consider the alleged physical, mental, and environmental restrictions in crafting the RFC. §§ 404.1545(b-d); 416.945; SSR 96-8p, 1996 WL 374184, at *6 (June 2, 1996).

At Step Two of the sequential analysis, the ALJ found that the conditions of anxiety, mood disorder, psychotic disorder, and OCD caused some significant degree of

---

[4] Because Plaintiff applied for DIB rather than Supplemental Security Income ("SSI"), the identical language found in 20 C.F.R. § 404.1545 applies here.

-14-

work-related limitation (Tr. 17).   The ALJ appears to have included these diagnoses based on a January, 2018 consultative psychological examination (Tr. 23 *citing* 454). The RFC states in relevant part that Plaintiff is "limited to simple and routine tasks involving only occasional changes in the work-setting" (Tr. 20).

The ALJ's finding that RFC did not require more stringent psychological limitations is well supported and articulated.   The ALJ acknowledged that consultative examiner's diagnoses (Tr. 23).   In support of the finding of only mild limitation in getting along with others, the ALJ cited Plaintiff's report that she did not experience problems interacting with others despite her medical conditions (Tr. 19).   The ALJ noted that the treating and consultative records did not show that Plaintiff had problems interacting with her treating and examining sources (Tr. 19).   The ALJ cited the consultative examiner's finding that Plaintiff was "cooperative, pleasant, and friendly with appropriate hygiene and eye contact as well as the ability to repeat digits or perform basic calculations without significant difficulty" (Tr. 23 *citing* 452).   She noted that the treating records showed that Plaintiff "did not find her psychological symptoms severe enough to seek formal psychiatric treatment or make regular complaint to her primary care provider" (Tr. 23).   Further, the finding of only mild limitations in interacting is directly supported by Dr. Balunas' January, 2018 finding of only mild limitation in interacting with others (Tr. 63).

Moreover, the record shows that Plaintiff denied a history of either mood problems

or anxiety (Tr. 518, 867). Contrary to her testimony that she had not driven since her

August, 2017 mastectomy, she was able to drive herself to the January, 2018 consultative

examination (Tr. 37, 449).  While she testified that she was unable to perform household

chores for any significant period, she reported to the consultative examiner that she took

care of her  elementary school-age son (Tr. 46-48, 450).

Because the ALJ's choice of psychological restrictions is supported by substantial

evidence and well explained, a remand on this basis is not warranted.

### B.  The Treating Physician Opinion

Regarding the physical conditions, Plaintiff points out that the RFC for sedentary

work is supported by neither Dr. Dua's treating opinion that Plaintiff was incapable of

even sedentary work nor Dr. Chiambretti's non-examining finding that she could perform

exertionally light work. ECF No.11, PageID.996 (*citing* Tr. 20, 65, 857-858).    In

particular, she contends that the RFC for frequent handling and fingering is unsupported

by either Dr. Dua's limitation to one hour grasping and 30 minutes fingering on the left

and two hours reaching bilaterally (Tr. 857) or Dr. Chiambretti's finding of no

manipulative limitation (Tr. 65).

However, the ALJ's findings regarding the exertional and manipulative limitations

do not provide grounds for remand.  As a threshold matter, it is well settled that an ALJ

is permitted to draw from the record as a whole in crafting the RFC. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727-728 (6th Cir. September 5, 2013)(rejecting contention ALJ was "bound" by one medical opinion - ALJ "properly based her RFC determination on all the evidence of record").

Further, the ALJ's reason for the "compromise" finding that Plaintiff was limited to frequent handling and fingering is well explained.  The ALJ cited the treating records and Dr. Shaw's consultative finding of a full range of motion, intact extremity strength, and a full range of motion in all joints (Tr. 23).  The ALJ noted that Dr. Dua's finding of stringent manipulative limitations was contradicted by both the treating records and Dr. Shaw's consultative findings (Tr. 25).  The ALJ noted her finding of *some*  degree of manipulative limitation was supported by the record showing "some significant limitations" providing "a basis for restricting her exertional, postural, manipulative, and mental abilities" (Tr. 25).  In other words, the ALJ found that Plaintiff's allegations of manipulative limitation (Tr. 41, 45) were entitled to partial credit (Tr. 21, 25).  The ALJ's accord of partial credit to Plaintiff's allegations is entitled to deference. *See Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)(An ALJ's assessment of claimant's allegations entitled to "great weight").  Thus, Plaintiff's argument that the ALJ  was either not permitted to craft an RFC reflecting a midpoint of two different medical opinions and/or, the ALJ failed to provide a rationale for the manipulative

limitations found in the RFC should both be rejected.

Plaintiff's related argument that Dr. Dua's May, 2018 treating opinion ought to have been accorded "controlling weight" is based on regulations that have been superseded. *See* ECF No.11, PageID.997. For claims filed before March 27, 2017, the opinion of a treating physician is accorded controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "not inconsistent with the other substantial evidence." *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) 20 C.F.R. § 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, at *5 (1996). However in contrast to the earlier claims where § 404.1527 is applied, for claims made on or after March 27, 2017, the ALJ will weigh both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record. 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"). The factors to be considered in evaluating medical opinions include supportability and consistency with the record as a whole; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose and extent of the treating relationship; whether the source has examined the claimant; specialization; and any other factors that support or undermine the medical opinion. §§ 404.1520c(c). ALJs must

articulate the "most important factors of supportability and consistency" of the medical opinions but "are not required to [] explain" the consideration given to the remaining factors. §§ 404.1520c(b)(2); 416.920c(b)(2).   Because Plaintiff did not file an application for benefits until September, 2017, the new standard set forth in § 404.1520c applies to her claim.[5]

The ALJ provided a sufficient analysis under § 404.1520c.  Her finding that Dr. Chiambretti's non-examining assessment was "moderately persuasive" and Dr. Dua's treating opinion "the least persuasive" is prefaced by a thorough discussion of the treating, consultative, and non-examining records (Tr. 21-23).  The ALJ cited the treating records showing a full range of motion in all joints, a normal gait, intact strength, and intact sensation in the upper and lower extremities (Tr. 23-24).  While Plaintiff faults the ALJ for declining to adopt Dr. Dua's disability opinion, she did not err in drawing on other portions of the record in crafting the RFC.

In closing, my recommendation to uphold the administrative findings should not

---

5. Plaintiff's brief does not contain a citation to § 1520c but rather, cites the previous regulation and only case law based on the interpretation of the same.  ECF No. 11. Defendant has properly challenged Plaintiff's reliance on the older standard.  ECF No. 15, PageID.1027.  In response to Defendant's motion and in a supplemental brief in response to Defendant's sur reply, Plaintiff continues to  argue that the "treating physician rule" set forth in § 1527 still applies.  ECF Nos. 16, 22. Plaintiff's argument her treating physician's opinion is entitled to presumptively controlling weight is not well taken.  Under 42 U.S.C. § 405(a) Commissioner has "full power and authority" to make rules and regulations under the Social Security Act.

read to trivialize Plaintiff's physical and mental conditions.  Nonetheless, because the ALJ's determination was within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court.  *Mullen v. Bowen, supra*.

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [ECF No. 15] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 11] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party

must file a concise response proportionate to the objections in length and complexity.

The response must specifically address each issue raised in the objections, in the same

order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*


s/R. Steven Whalen
R. Steven Whalen
United States Magistrate Judge

Dated: February 23, 2021


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 23, 2021 electronically and/or by U.S. mail.


s/Carolyn M. Ciesla
Case Manager